LOUISA BOWLER *v.* CAROLINE W. BLAIR.

[Abstract Kentucky Law Reporter, Vol. 6—666.]

**Dower Right of Widow.**

Partnership real estate is regarded as partnership assets for the payment of partnership liabilities and before the widow or heir can claim, the firm debts must be paid and the rights of the partners in the partnership estate determined, and partnership real estate is deemed personalty when by agreement, express or implied, the partners intend it to be treated as a part of their capital stock.

**When Widow May Claim Dower.**

When partnership real estate is intended only as partnership stock the claim of the widow or heir of one of the partners to dower can not be asserted, so as to affect the rights of a surviving partner, but where the claims of the partnership are satisfied unless the articles of partnership show a different intention, the widow and heir may claim dower.

**Evidence to Show Partnership Lands to Be Partnership Stock.**

The fact that in the partnership accounts the land is treated the same as other firm property as to purchase money, income and expenses are controlling circumstances in determining the intent of the partners as to how partnership real estate is held and from it an agreement may be inferred.

APPEAL FROM KENTON CIRCUIT COURT.

March 7, 1885.

OPINION BY JUDGE PRYOR:

In the year 1845, McLean I. Blair, William M. Walker and Sanderson Roberts, were engaged in making bale rope and bagging under the firm name of M. I. Blair & Co. The title to the property was in M. I. Blair, one of the firm, but it is conceded that it was held for the firm and constituted a part of the firm property. It was known as the "bagging factory property." In the year 1846, two of the firm, Blair and Walker, conveyed all the property, including the realty and machinery to their company partner, Roberts. Not long after this conveyance to Roberts, Blair, one of the partners who had sold to Roberts formed a partnership with one Pepper with a view of making bale rope, and the two purchased the prop-

erty and machinery of Roberts and obtained from him deeds there-for, Blair one undivided half of the property and Pepper the other half. Pepper & Blair failed in business and made an assignment of the partnership effects to one Kemper and under this assignment the entire property was sold and appellants or those they represent became the purchasers. Blair, the partner of Pepper, died after the sale and his widow Caroline W. Blair, asserted her right to dower in the one-half of the realty conveyed to her husband and sold to these appellants, and on the hearing below obtained a judgment. The appellants insist that each partner held his undivided interest in behalf of the firm and not in his own right; that the sole object in having separate deeds was to enable each of the partners to obtain credit that they inferred they would not otherwise have. It is well understood that partnership real estate is to be regarded as partnership assets for the payment of partnership liabilities and before the widow or heir can claim, the partnership debts must be paid and the rights of the partners in the partnership estate determined. It was held in *Lowe v. Lowe,* 13 Bush 688, "that partnership real estate should be deemed personalty, when by agreement, express or implied, the partners intend that it shall be treated as part and parcel of their capital stock, and not only for the purposes of the partnership, but for all purposes." If intended for the purposes of the partnership only, no claim of the widow or heir can be asserted so as to affect the rights of the surviving partner, but where the claims of the partnership are satisfied, unless the articles of partnership show a different intention, the widow and heir may claim.

There is but little difficulty in determining the legal question involved in this controversy, and the only question of doubt arises when considering the facts to which the law is to be applied. When Roberts sold and conveyed to Blair and Pepper this property, they paid him each, some twelve or fifteen thousand dollars and agreed to discharge certain liens upon the property and to pay certain debts that Roberts had undertaken to pay for the old firm. Pepper obtained from Blair a mortgage on the half interest conveyed to him to secure Pepper in what Blair had agreed to pay of these debts and also to secure to Pepper the one-half of any loss that might be sustained in the partnership they had just formed. It is argued

that this is inconsistent with the idea that the half of the property conveyed to Blair belonged to the partnership and for that reason, doubtless, the chancellor gave to the widow dower in that part of the realty.

It is plain from the testimony of the attorney who prepared the articles of partnership, as well as the deeds from Roberts to Blair & Pepper, that the two latter had entered into partnership for the purpose of buying this property and engaging in the same business of the old firm. They were but the successors of M. I. Blair & Co., and held this property in the same way. The nature of the business and the mode of treating and conducting the partnership after its formation conduces strongly to show that the realty was partnership assets and belonged to the one partner as much as the other.

The attorney who drew the writings says it is his distinct recollection and best remembrance from statements made by both parties when directing him to prepare the partnership agreement and before the conveyances were made, "that the Globe Mills Factory, machinery and the entire purchase from Roberts was to be conveyed and held by them as partners."

The witness says he is fortified in this statement from the fact that when he asked why the partners should take separate deeds for partnership property, they both told him it was to give them separate credits. Mr. Pepper residing at Maysville, could get his friends in Mason county to endorse him, and Mr. Blair residing in Cincinnati, could get friends to endorse him there, and that was the reason why the partners determined to have separate deeds. This attorney also informed Mr. Blair that it was unnecessary for his wife to sign the deed of assignment. Besides it is evident that this property was appropriated to partnership purposes, not only by reason of its use, but by the entries showing that the payments made by each constituted a part of the capital stock of the firm. The debts that the two had agreed to pay in the deeds made by Roberts constituting a large part of the consideration were paid by the firm out of the firm assets, and so entered on the books of the firm. Their books were examined by a skilled accountant and although they were not produced by appellee when called on, a sufficient examination was made to enable the witness to make a statement with reference to their entries and to speak of them understand-

ingly. It was within the power of appellee to produce the books and the failure and refusal to do so would authorize the conclusion, at least, that the statement made by the accountant is correct.

It is insisted that the testimony of the attorney as well as the statements of Clark made from the firm books can not be read as against the widow. The existence of this partnership is a question of fact.

Its terms are not before the chancellor because the articles of partnership have been mislaid, or are lost. If there was no partnership when the conveyance was made to the husband of the appellee, then a subsequent disposition of it by him for partnership purposes could not bar the widow of dower. But it is argued by the appellants that the partnership was created and the writings entered into by which the property was purchased, constituted the capital stock, and in order to show the fact they have introduced the attorney who prepared the writings and the books of the firm to sustain him. Suppose the articles of co-partnership was produced. It would certainly be competent to establish the partnership and its terms, and when lost we see no reason why its contents may not be shown by the attorney preparing them at the instance of both the parties. If such is inadmissible to show the partnership, it would result in depriving the surviving partner of any means of showing as against the widow that she had no right to dower. The partnership being established as in this case, the mode of conducting it by the parties, and their entries with reference to the capital stock or payments made, would be competent to fortify and strengthen the evidence as to the contents of the original agreement when it has been lost or mislaid.

It would not only be competent as between the partners, but as to third persons, and certainly as to the widow whose legal right depends upon the manner in which the husband was seized of the estate.

If the deed to the husband is conclusive as to her rights, then this testimony is incompetent. "Real estate purchased for partnership purposes and paid for by partnership funds becomes partnership property, and it does not seem to be material in what manner or by what agency the land is bought, or in what name it stands," when the legal title to lands purchased and held for partnership uses

is in the partners individually, they are nevertheless, subject to an implied trust that they shall be applied to the payment of the partnership debts, and the widow of a deceased partner is not entitled to dower therein until the trust is fully executed. In the case of *Bopp v. Fox,* 63 Illinois 540, four persons under a verbal agreement entered into a partnership to purchase land and erect a planing mill upon it; each paying $750 of the first payment, and the same was conveyed to them by their several names and holding in severalty the legal title to an undivided one-fourth. After this written article of partnership was entered into and large sums of money expended on the partnership property, one of the parties dying, it was held that the widow was not entitled to dower, the court saying: "As regards the purchase having not been made with partnership funds, in our view it matters little in this respect whether the purchase was made with a joint fund, previously formed by contributions from each of the partners, of a proportional part, or whether each one repeatedly paid his proportional part of the purchase money, the essential thing being whether it was paid as partnership money for a partnership purpose."

In the case of *Fairchild v. Fairchild,* 64 New York 471, the court said: "There is no distinction in respect to the proof necessary to establish the fact that real estate is partnership property in such a case, and in the case of a conveyance to the several partners, it may be established in either case by parol evidence. In the case cited the conveyance was made to one partner of the entire property. Further it is said "the fact that in the firm accounts the land is treated the same as other firm property as to purchase money, income and expenses, is a controlling circumstance in determining the intent, and from it an agreement may be inferred.

After a careful examination of the facts we are satisfied the contents of the mortgage by Blair & Pepper is not sufficient to overcome the testimony on behalf of the partnership claim. Under the arrangement between the partners made to enable each to obtain credit at home, the title in fee was united in Blair to the undivided one-half. He had already been involved by the old firm and had aimed to pay a large indebtedness to Roberts as part of the purchase money.

A sale and conveyance by Blair of his half to an innocent pur-

chaser without notice would have defeated the right of a co-partner as against the purchaser, and to secure Pepper against contingencies, the mortgage was given. If the partnership was not liable for these debts, we see no reason why Pepper should have been indemnified. He was not individually responsible and it must be assumed that the articles of partnership embraced all the realty upon which the buildings and machinery were located, as stated by the attorney, or there was no reason for securing Pepper, for if not liable as a partner he was not responsible in any other way, and to secure Pepper the mortgage was executed protecting him against loss, as well as against these debts that had in fact been assumed by the firm. The character of the property purchased, the manner of its use, and the entries on the firm books showing that the money involved was the capital stock, the payments of the debts secured by the deeds from Roberts to the two partners out of the firm assets and the statement of the attorney as to the contents of the partnership agreement establishes the fact that this was partnership property purchased with partnership funds and for partnership purposes.

The partnership being largely insolvent the widow has no claim to dower as against these purchasers. The judgment is therefore reversed and remanded with directions to dismiss the petition.

Judgment *reversed.*

*John W. Stevenson, W. Lindsay, Benton & Benton, for appellants.*

*J. G. Carlisle, W. W. Cleary, for appellee.*